UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE USA, INC., | No. C 09-00537 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| XL GLOBAL SERVICES, INC., | Re: Defendant's Motion to Dismiss Plaintiff's Promissory Fraud Claim |
| Defendant. | |

Plaintiff Oracle USA, Inc. ("plaintiff" or "Oracle") brought suit against XL Global Services, Inc. ("defendant" or "XL") alleging breach of contract and related claims based on defendant's alleged failure to pay for services rendered by plaintiff. Defendant counterclaimed for breach of warranty. Defendant now moves for partial judgment on the pleadings on the fifth count of plaintiff's complaint, which advances a claim for promissory fraud. Having considered the pleadings and the arguments of the parties, the court enters the following memorandum and order.

BACKGROUND[1]

I.      The Parties

XL is a Delaware corporation having its principal place of business in Stamford, Connecticut. It is a part of the XL Capital Ltd. group of companies and provides information technology support to the XL Capital companies, which are a worldwide provider of insurance and reinsurance products. Oracle is a Colorado corporation having its principal place of business in

Redwood City, California. It is a supplier of information management software. It also supplies consulting services relating to the implementation and use of its software.

II.     The Agreements

The parties entered into a series of agreements through which Oracle licensed certain software to XL and contracted to provide consulting services relating to the implementation of the software.

On December 26, 2006, the parties entered into an Oracle License and Services Agreement governing XL's use of programs sold to it by Oracle. In late 2007,[2] the parties signed an "ordering document" through which XL ordered an estimated $413,156 of services from Oracle. The document describes the services as follows:

> Oracle will provide up to two hundred thirty-eight (238) person days of functional and technical assistance with our Oracle Business Intelligence Suite Enterprise Edition ("OBIEE"), Release 10.1.3.21, including the following: A. Creating financial and operational reports based on previously installed PeopleSoft financial applications and other data as needed; B. Building the metadata layer for your reporting requirements; C. User testing of reports in relation to your business processes and requirements; and D. Managing and validating the OBIEE production environment.

Compl., Exh. 1 at 4. The document also set forth hourly billing rates charged by Oracle's consultants, depending upon expertise.

On February 18, 2008, the parties concluded a second ordering document through which XL ordered an additional estimated $349,721 in services. The services ordered were similar to those ordered in the Second Ordering Document, with some variation. On March 28, 2008, the parties concluded a final ordering document which amended the previous one. This third ordering document added an additional $256,628 in services.

According to Oracle, Oracle provided services in accordance with these agreements and issued timely invoices to XL for all such services. The ordering documents stated that all invoices were due and payable within thirty days of the invoice date.

2

III.   Allegations Pertaining to the Alleged Fraud

During June 2008, Wendy Cappola, an XL Vice-President, discussed the status of the services provided by Oracle with John Hayes, an Oracle employee. Cappola and Hayes discussed XL's request that Oracle continue providing services through the end of June 2008, when Oracle was scheduled to transition off the project. According to Oracle's complaint, Cappola promised that XL would pay all outstanding invoices for consulting services and expenses pursuant to the various ordering documents if Oracle would provide additional consulting services by Oracle consultants Kevin Campbell and James Poon during the month of June 2008 on a non-billable basis. By email dated June 11, 2008, Hayes wrote, "Labor: the remaining project labor funding will cover the following: Sandeep : 06/02-06/27[,] Sam : 06/09-06/30[.]  Again, in effort to agree on address [sic] outstanding financial commitments our proposal is for other labor to be non-billable, Kevin [Campbell] & James [Poon] roll-off on June 20th." Compl., Exh. 4 at 2. By email to Hayes dated June 13, 2008, Cappola confirmed her understanding that Campbell and Poon would not be billable during June but that two other consultants would be billable during that month. Oracle alleges that Cappola's email confirmed that XL would pay its outstanding bills in exchange for the free consulting services of Campbell and Poon during June 2008.

To date, XL has refused to pay a total of $544,345.35 of the cost of the services provided by Oracle. In addition to claims related to breach of contract, Oracle's complaint advances a claim for promissory fraud. Oracle alleges, on information and belief, that XL did not intend to perform the promise it made through Cappola at the time it made such promise, and that XL made the false promise with the intention of inducing Oracle to provide free additional consulting services.[3] Oracle alleges that XL's oppression, fraud and malice entitles Oracle to punitive damages.

IV.   Procedural History

Oracle filed this action on February 5, 2009. On April 21, XL answered and asserted a counterclaim against Oracle for breach of warranty. Oracle answered the counterclaim on May 14 and filed the instant motion on May 19. Oral argument was heard on June 29, 2009.

3

LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings are closed upon the filing of a complaint and an answer, unless a counterclaim, cross-claim or third-party claim is interposed, or the court orders a third-party answer. Wright & Miller, Federal Practice and Procedure: Civil 3d § 1367; see Fed. R. Civ. P. 7(a). A Rule 12(c) judgment on the pleadings is a decision on the merits. Gen. Conf. Corp. of Seventh Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

When Rule 12(c) is used to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6). Wood v. County of Alameda, 875 F. Supp. 659, 661 (N.D. Cal. 1995) (Henderson, J.), citing McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir.1988); see also Wright & Miller §§ 1367-1369. Judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997), quoting George v. Pacific-CSC Work Furlough, 91 F.3d 1227, 1229 (9th Cir. 1996). As in a Rule 12(b)(6) or Rule 56 motion, the court views the facts presented in the light most favorable to the non-moving party, construing all reasonable inferences in that party's favor. See Seventh Day Adventists, 887 F.2d at 230 (9th Cir. 1989) (citation omitted).

DISCUSSION

XL moves the court to dismiss Oracle's promissory fraud claim, which is Oracle's only tort claim—i.e., the only claim that would support an award of punitive damages. Promissory fraud is a subspecies of the action for fraud and deceit. Lazar v. Superior Court, 12 Cal.4th 631, 638 (Cal. 1996). The elements of fraud are misrepresentation, scienter, intent to induce reliance, justifiable reliance and resulting damage. Id. XL argues that the allegations in this action are fundamentally about breaches of contract. As such, XL contends, the promissory fraud claim is barred by the

4

1  economic loss rule as articulated by the California Supreme Court in Robinson Helicopter Co., Inc.
2  v. Dana Corp., 34 Cal.4th 979 (Cal. 2004).  Oracle agrees that California law governs this diversity
3  action.  It also agrees that Robinson Helicopter is the seminal case on the economic loss rule.  Oracle
4  contends, however, that its promissory fraud claim is not barred by the economic loss rule.
5  Specifically, Oracle argues that its fraud claim is based on intentional conduct independent of the
6  written contracts between the parties, and that Oracle seeks damages that are not recoverable for
7  breach of the written contracts.  It states that the promissory fraud claim is for damages caused by
8  the provision of free services by Campbell and Poon, and that these services were not part of the
9  contract or contracts between the parties.  Oracle also contends that California courts have declined
10 to apply the economic loss rule to intentionally fraudulent conduct that extends "beyond the four
11 corners of the contract."

12       The parties have focused on the Robinson Helicopter and the economic loss rule.  These will
13 be discussed below, but first it is necessary to step back and examine how California law demarcates
14 the boundary between contract and tort more generally.  Common law courts have often struggled to
15 define when tort remedies are available in cases involving the breach of some promise made in the
16 course of a business relationship.  The basic legal principle is clear in California, although its
17 application to specific cases can vary based upon the facts at hand.  California statutory law limits
18 the imposition of exemplary or punitive damages for oppression, fraud or malice to cases "not
19 arising from contract."  Cal. Civ. Code. § 3294(a); see also id. § 3333 (authorizing damages for both
20 anticipated and unanticipated losses proximately caused "[f]or the breach of an obligation not arising
21 from contract").  The California rule comports with the rule proposed by the American Law
22 Institute.  See Restatement (Second) of Contracts § 355.  The California Supreme Court has
23 addressed the issue on several occasions.  In Foley v. Interactive Data Corp., 47 Cal.3d 654 (Cal.
24 1988), the court held that a former employee could not maintain a claim for tortious breach of an
25 implied covenant of good faith and fair dealing resulting from his allegedly wrongful termination.
26 Id. at 700.  The starting point for the court's analysis was an examination of the distinction between
27 tort and contract law: "The distinction between tort and contract is well grounded in common law,
28

5

1 and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are
2 created to enforce the intentions of the parties to the agreement, tort law is primarily designed to
3 vindicate 'social policy.'" Id. at 683, citing Prosser, Law of Torts (4th ed. 1971) at 613. The court
4 noted "[I]n traditional contract law, the *motive* of the breaching party generally has no bearing on the
5 scope of damages that the injured party may recover for the breach of the implied covenant; the
6 remedies are limited to contract damages." Id. at 699 (emphasis in original). This limitation of
7 available damages is motivated in part by the recognition that "predictability about the cost of
8 contractual relationships plays an important role in our commercial system." Id. at 683 (citation
9 omitted).[4] The court observed that an exception to this rule had developed in the context of
10 insurance policies due to the special relationship between an insurer and an insured. See id. at 690-
11 691. The court refused to extend the "special relationship" rationale into the sphere of employment
12 relationships. Id. at 692.

13 Similarly, in Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503 (Cal.
14 1994), the court reversed a lower court's award of damages against a defendant who had been held
15 liable for conspiring to tortiously interfere with its own contract with the plaintiff. The court held
16 that the defendant, in entering a contract with the plaintiff, did not assume an independent tort
17 obligation not to interfere with the performance of its own contract. Id. at 517-518. The court
18 wrote, "In the absence of an independent tort, punitive damages may not be awarded for breach of
19 contract even where defendant's conduct in breaching the contract was willful, fraudulent, or
20 malicious." Id. at 516 (citation and internal quotations omitted). The court also noted that the law
21 does not distinguish between good and bad motives for breaching a contract. Id. The California
22 Supreme Court has applied these principles in other cases, as well. See, e.g., Hunter v. Up-Right,
23 Inc., 6 Cal.4th 1174, 1184 (Cal. 1993) (refusing to recognize fraud cause of action in wrongful
24 termination context); Erlich v. Menezes, 21 Cal.4th 543 (Cal. 1999) (rejecting expansion of contract
25 damages to include emotional distress claims in a negligent construction case).

26 In summary, the fundamental rule in California is that no tort cause of action will lie where
27 the breach of duty is nothing more than a violation of a promise which undermines the expectations

28

6

of the parties to an agreement. Exceptions have been permitted only where: a breach of duty causes a physical injury; the covenant of good faith and fair dealing is breached in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or a contract was fraudulently induced. Butler-Rupp v. Lourdeaux, 134 Cal. App. 4th 1220 (2005), quoting Erlich, 21 Cal.4th at 551-552. Oracle has not argued that any of these exceptions apply.

The threshold question in this case is whether Oracle states a claim that arises from something other than contract—i.e., for a breach of some duty that has been placed on XL to vindicate social policy, rather than to protect Oracle's bargained-for expectations. Oracle asserts that the costs of providing free services by Campbell and Poon do not arise from any contract, because the license agreement and ordering documents did not provide for such free services. According to Oracle, XL's acceptance of those services was therefore conduct outside of the "four corners" of the contract. This argument ignores the fact that the exchanges between Cappola and Hayes allegedly constituted a separate contract or agreement, by the terms of Oracle's own complaint.[5] A factual underpinning of Oracle's promissory fraud claim is the failure of XL to keep its promise allegedly made through Cappola that XL would pay what it already owed if those free services were provided. The issue centers upon XL's alleged failure to meet Oracle's bargained-for expectations. For this reason, Oracle's contention that its fraud damages "are not co-extensive with its contract damages" is without merit. Contract remedies, not tort remedies, are appropriate "to enforce the intentions of the parties to the agreement." Foley, 47 Cal.3d at 683. The parties' intentions and expectations are precisely what are at issue in the dispute about Oracle's provision of Campbell and Poon's services in exchange for further assurances about payment. There is no conduct at issue which is independent from the various promises made by the parties in the course of their contractual relationship.

The question remains whether the principles articulated in Robinson Helicopter, upon which both parties place so much emphasis, somehow provide an exception to the general rule and thereby save Oracle's claim. The Robinson Helicopter case refined the economic loss rule, which is frequently applied in products liability cases, and which reflects the concern of maintaining the

7

1 appropriate distinction between contract and tort.  In many products liability cases, a claim may lie
2 in contract for a breach of warranty, while a separate claim may lie in tort for damage caused to
3 person or property by the defective product.  California law limits the tort damages available in such
4 cases to "physical harm to person or property."  Seely v. White Motor Co., 63 Cal.2d 9, 18 (1965).
5 This is the crux of the economic loss rule.  In Jimenez v. Superior Court, 29 Cal.4th 473 (Cal. 2002),
6 the California Supreme Court reviewed the history of the economic loss rule and summarized it as
7 follows: "In summary, the economic loss rule allows a plaintiff to recover in strict products liability
8 in tort when a product defect causes damage to 'other property,' that is, property other than the
9 product itself.  The law of contractual warranty governs damage to the product itself."  Id. at 483.  In
10 short, the "economic loss rule" as it is understood in California is primarily designed to limit tort
11 damages for losses resulting from defective goods or services.  See Rejects Skate Magazine, Inc. v.
12 Driver, No. 06-2590, 2006 U.S. Dist. LEXIS 63157, at *12 (N.D. Cal. Aug. 22, 2006) (Wilken, J.)
13 (holding limitation on tort recovery applies to negligent performance of services).

14      With this context in mind, a review of Robinson Helicopter is now in order.  The plaintiff in
15 that case had contracted with the defendant over a number of years to purchase clutches for use in
16 helicopters manufactured by the plaintiff.  These clutches functioned primarily as a safety device.
17 The plaintiff later learned that the defendant had, for over a year, misrepresented that the clutches it
18 produced conformed to contract specifications.  The defendant had issued false certificates of
19 conformance, certifying that its clutches were ground to the required level of hardness when in fact
20 they were not.  The failure rate of the non-conforming clutches was higher than normal, and the
21 Federal Aviation Administration and its British equivalent required the plaintiff to recall each
22 helicopter with a faulty clutch and replace the component.  This resulted in substantial costs to the
23 plaintiff.  34 Cal.4th at 985-988.  Moreover, although no helicopter had crashed due to a faulty
24 clutch, the defendant's conduct had exposed the plaintiff to the risk of such an occurrence and the
25 resulting liability for personal damages.  Id. at 991.  The court held that the economic loss rule did
26 not bar the imposition of punitive damages on the defendant in that case.  Such damages could be
27 imposed because of the defendant's intentional affirmative misrepresentation of contract
28

8

1    compliance, which was independent of the breach of contract. The court explained, "A breach of
2    contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by
3    the breach. . . . However, a party to a contract cannot rationally calculate the possibility that the
4    other party will deliberately misrepresent terms critical to that contract." Id. at 992-993 (citations
5    and internal quotations omitted). The court also noted that its holding was "narrow in scope and
6    limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose
7    a plaintiff to liability for personal damages independent of the plaintiff's economic loss." Id. at 993.

8          There are several reasons why Robinson Helicopter does not salvage defendant's promissory
9    estoppel claim. Firstly, Robinson Helicopter was a products liability case, and the court's reasoning
10   suggests that the holding applies only to such cases. See id. at 988 ("This [economic loss] doctrine
11   hinges on a distinction drawn between transactions involving the sale of goods for commercial
12   purposes where economic expectations are protected by commercial and contract law, and those
13   involving the sale of defective products to individual consumers who are injured in a manner which
14   has traditionally been remedied by resort to the law of torts.") (citation and internal quotations
15   omitted). The claim at issue on this motion, by contrast, is not based on a faulty product or service.
16   Oracle provided products and services to XL, but the promissory fraud claim is Oracle's, not XL's.
17   XL was to provide no product, just money. It is unlikely that the California Supreme Court intended
18   the holding of Robinson Helicopter to apply outside of the realm of products liability.

19         Even if the exception to the economic loss rule articulated in Robinson Helicopter could
20   apply to a fraud claim not premised on products liability, the instant case does not present any reason
21   to so apply it. The only harm to Oracle was its failure to receive payment; therefore, there is no
22   physical injury or possibility of physical injury resulting from XL's conduct. Nothing that XL has
23   allegedly done has exposed Oracle to liability to any third party for personal damages or any other
24   type of loss. The exposure to liability for personal damages was key to Robinson Helicopter's
25   holding that the economic loss rule did not bar tort remedies in that case. The cases cited by Oracle
26   do not establish otherwise. The case of Western Emulsions, Inc. v. BASF Corp., No. C 05-5246,
27   2007 WL 1839718 (C.D. Cal. Jan. 19, 2007), held that the economic loss rule did not as a matter of
28

9

1  law bar punitive damages where the plaintiff had presented sufficient evidence that the defendant's
2  misrepresentations about the quality of its product were independent of its breach of contract. Id. at
3  *9. The district court's examination of Robinson Helicopter was cursory—comprising only one
4  sentence—and the court did not address the exposure-to-liability issue stressed by the California
5  Supreme Court. The other case relied upon by Oracle, Cardonet, Inc. v. IBM Corp., No. C 06-6637,
6  2007 WL 3256204 (N.D. Cal. Nov. 5, 2007) (Whyte, J.), applied New York law, not California law,
7  and did not mention Robinson Helicopter.

8        The case at bar presents a quintessential scenario in which a party could rationally calculate
9  the possibility of breach. Oracle knew that XL had not paid its previous bills on time. It was acutely
10 aware that issues had arisen regarding "outstanding financial commitments." Oracle nevertheless
11 offered some non-billable labor in order to finish the project and resolve the situation. Oracle could
12 rationally calculate that XL might remain dissatisfied with its new system and continue to refuse
13 payment. Oracle points to Robinson Helicopter's admonishment that parties should not be expected
14 to anticipate fraud and dishonesty in every transaction. See Robinson Helicopter, 34 Cal.4th at 993.
15 But Oracle has not alleged the sort of "deviation from socially useful business practices" such that
16 "enforcing . . . tort duties will . . . aid rather than discourage commerce." Id. at 992, quoting Erlich,
17 21 Cal.4th at 554. The Robinson Helicopter case, even if applicable to the instant action, does not
18 provide any sort of exception to the general principles governing the distinction between tort and
19 contract in California.

20       In summary, XL allegedly failed to keep its promise to pay its bills, and the resulting harm to
21 Oracle is economic in nature. No physical harm or exposure to liability for personal damages has
22 resulted from XL's withholding of payment. The allegations of the complaint describe a
23 straightforward breach of a series of agreements to make payment for services provided. Virtually
24 any time a contract has been breached, the party bringing suit can allege that the breaching party
25 never intended to meet its obligations. Businesses should not have to worry that simple disputes
26 about bills and contract performance will routinely lead to the threat of punitive damages. To allow
27
28

10

tort claims in actions such as this one would collapse the carefully-guarded distinction between contract and tort law.

CONCLUSION

For the foregoing reasons, defendant's motion is GRANTED. Plaintiff's claim for promissory fraud is DISMISSED.

IT IS SO ORDERED.

Dated: July 13, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. The facts herein recited are drawn from Oracle's complaint and the exhibits thereto appended. As is proper on a Rule 12 motion, the court assumes the truth of Oracle's allegations and draws all reasonable inferences in Oracle's favor.

2. The complaint states that this document had an effective date of September 30, 2007. Compl. ¶ 9. However, the referenced exhibit was not finalized until November 6, 2007. Id., Exh. A at 3.

3. The court assumes, but does not decide, that Oracle has pleaded sufficient facts to state a claim for promissory fraud. Although Rule 9(b)'s heightened pleading standard for fraud allows a plaintiff to allege intent generally, a plaintiff must nevertheless meet the basic pleading standards set forth in Rule 8. Under the Supreme Court's recent jurisprudence, formalistic recitations of the elements of a cause of action and naked assertions devoid of further factual content have been found insufficient to state a claim. See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). Oracle's bare assertion of XL's intent not to keep its promise, absent anything further, does not self-evidently meet the Twombly/Iqbal standard.

4. The rule also allows for the efficient breach of contracts, which is socially desirable.

5. It does not matter whether Cappola's alleged promise is ultimately enforceable, a question not at issue on this motion.